IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2025

**WHITCLIFFE MCLEOD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 16-06596      Carlyn L. Addison, Judge

_____

**No. W2024-01786-CCA-R3-PC**
_____

The Petitioner, Whitcliffe McLeod, appeals the Shelby County Criminal Court's summary dismissal of his post-conviction petition for failure to prosecute. Based on our review, we conclude that the post-conviction court abused its discretion by dismissing the petition. Accordingly, the judgment of the post-conviction court is reversed, and the case is remanded to the post-conviction court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed, Case Remanded**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and TIMOTHY L. EASTER, J., joined.

Gerald S. Green (on appeal) and C. Alex Jones (at hearing), Memphis, Tennessee, for the appellant, Whitcliffe McLeod.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Monica Timmerman and Leslie Byrd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner and Aaron Forbes were friends. They grew up together in Jamaica, and both ended up living in the United States. *See State v. McLeod*, No. W2018-01646-CCA-R3-CD, 2019 WL 4733476, at *1, 4 (Tenn. Crim. App. Sept. 26, 2019), *no perm. app. filed*. On the night of August 19, 2016, the Petitioner shot Mr. Forbes and Mr. Forbes's wife, Andrea Williams-Forbes, multiple times. *Id.* at *2. Mr. Forbes died at the

scene, and Mrs. Williams-Forbes was left paralyzed from the waist down. *Id.* at *2, 3. The firearm used to shoot the victims was never recovered. *See id.* at *3.

The Shelby County Grand Jury indicted the Petitioner for the first degree premeditated murder of Mr. Forbes and the attempted first degree premeditated murder of Mrs. Williams-Forbes. *Id.* at *1. At trial, Mrs. Williams-Forbes testified that the Petitioner accompanied her and her husband on a shopping trip to Walmart. *Id.* Her husband and the Petitioner argued during the trip, and the Petitioner later shot her and her husband as they were driving away from the Petitioner's house. *Id.* at *1, 2. During a search of the Petitioner's home, a police officer found an empty gun case for a gun like the one used to shoot the victims. *Id.* at *2. The Petitioner testified on his own behalf that he saw a man wearing a hoodie shoot the victims and that the Petitioner ran into the woods and stayed there all night because he was afraid of the gunshots. *Id.* at *4. At the close of the proof, the jury convicted the Petitioner of the lesser-included offenses of second degree murder and attempted second degree murder. *Id.* at *4.

The trial court held a sentencing hearing and ordered that the Petitioner serve consecutive sentences of twenty-four years for second degree murder and twelve years for attempted second degree murder. *Id.* at *5. On direct appeal of his convictions, the Petitioner claimed that the trial court erred by imposing consecutive sentencing. *Id.* at *6. This court concluded that the trial court did not err and affirmed the Petitioner's effective thirty-six-year sentence. *Id.*

The Petitioner did not file an application for permission to appeal to our supreme court but filed a timely pro se petition for post-conviction relief on September 21, 2020. In the petition, the Petitioner claimed that he received the ineffective assistance of trial counsel because counsel failed to file a motion to hire an expert on Jamaican culture to testify at trial, failed to file a motion for the services of a Jamaican interpreter during the Petitioner's trial testimony, and failed to file a motion to suppress a statement given by the Petitioner to a detective without an interpreter present. The Petitioner also claimed in the petition that he received the ineffective assistance of appellate counsel because counsel challenged his consecutive sentences but did not raise any issues that would have resulted in the reversal of his convictions. The Petitioner also argued that he was entitled to post-conviction relief based on trial and appellate counsels' cumulative errors. The State filed a written response to the petition on December 15, 2020, and the post-conviction court appointed counsel for the Petitioner on March 24, 2021. On December 15, 2022, the post-conviction court allowed appointed counsel to withdraw and appointed second post-conviction counsel. On June 30, 2023, second post-conviction counsel filed an amended petition. The Petitioner did not allege any additional issues or grounds for ineffective assistance of counsel in the amended petition but requested the right to amend the original petition if necessary.

On September 4, 2024, the post-conviction court held a hearing on the petition. The entirety of the colloquy between the post-conviction court and the parties appears in the hearing transcript as follows:

[The State]: I believe [post-conviction counsel] would like to address on [the Petitioner].

THE COURT: Yes, ma'am.

[The State]: He's set for a hearing on his petition for post-conviction relief today.

THE COURT: Yes, ma'am.

[The State]: Go ahead.

[Post-conviction counsel]: Yeah. I believe Criminal Court 10 may have -- no, actually for a fact, Criminal Court 10 is in trial. And so, this post-conviction is, again, [about trial counsel, who is now a judge]. Obviously, she can't go forward with it today and also the [Petitioner] is not present. And so, Your Honor, if we could hold this until next week when [the judge] is not in trial so that we may select a hearing date.

THE COURT: State.

[The State]: I have no objection to that, Judge. I didn't know if the Court had had a chance to review the petition and allegations that were raised therein prior to today.

THE COURT: I have.

[The State]: You have?

THE COURT: The pro se petition, yes. The second petition filed by counsel, yes.

[The State]: Okay.

THE COURT: I have reviewed the file, yes.

[The State]: Okay. But I have no objection to holding it over.

THE COURT: I got an objection.

[The State]: You have an objection[?]

THE COURT: I do.

[The State]: Okay.

THE COURT: [Post-conviction counsel], you were appointed to this matter December 15th of 2022. Six months later, you filed an amended petition adopting every allegation alleged by [the Petitioner] and asking this Court for leave to amend should something else arise. Six months after December 15th of 2022 is June of 2023. Here we are August, no, September 4th of 2024 and there are mandatory obligations of counsel on post -- under the Post-Conviction Procedure Act which I don't believe have been met. This matter has been set 17 times, 12 of which have been for report, 5 of which have been for a hearing. I'm showing this matter dismissed. Y'all have a good day.

[The State]: Thank you, Your Honor.

[Post-conviction counsel]: Thank you, Your Honor.

THE COURT: I'll draft an order. Thank you.

[Post-conviction counsel]: Thank you.

On November 1, 2024, the post-conviction court entered a brief written order dismissing the petition. Relevant to this appeal, the order provides as follows:

The Petitioner filed a pro se petition for post-conviction relief on September 21, 2020 alleging denial of effective assistance of counsel and "other grounds." [Second Post-conviction counsel] was appointed to represent the Petitioner on December 15, 2022. After examination of the Pro Se and Amended Petitions filed in this case, together with the files, record, transcripts, and/or correspondence relating to the judgment(s) and previously imposed sentence(s), this Court finds that the Petition is hereby **DISMISSED**.

- 4 -

The Petitioner was scheduled for approximately twelve report settings following [second post-conviction counsel's] appointment on the petition for post-conviction relief. The matter was scheduled for hearing on five separate occasions. At no time was counsel for Petitioner prepared to go forward on the Petition. To be clear, on the fifth and final setting for an evidentiary hearing counsel for the [P]etitioner failed to complete an Order of Transport for their client to appear for the matter to be heard. Mandatory obligations of appointed counsel were not met.

**IT IS THEREFORE ORDERED, ADJUDICATED, AND DECREED** that the [P]etitioner's Petition for Post-Conviction Relief is hereby **DISMISSED**.

## ANALYSIS

On appeal, the Petitioner claims that the post-conviction court abused its discretion and violated his due process rights by summarily dismissing his petition without providing notice and an opportunity to be heard; that the post-conviction court erred by failing to distinguish the current request for a continuance from prior requests; and that summary dismissal of the petition was an excessive and disproportionate sanction when the request for a continuance would not have caused prejudice to the State. The State argues that the post-conviction court acted within its discretion to dismiss the petition because the court's having to reset the case seventeen times shows that the Petitioner failed to prosecute. We conclude that the post-conviction court abused its discretion.

"[A] trial court has inherent authority to dismiss a petition for post-conviction relief with prejudice based on a petitioner's failure to prosecute." *Caraway v. State*, No. W2021-00360-CCA-R3-PC, 2022 WL 1580639, at *7 (Tenn. Crim. App. May 19, 2022) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-33 (1962)), *perm. app. denied* (Tenn. Sept. 29, 2022). Although post-conviction courts may dismiss on their own motion for failure to prosecute, "'this authority should be exercised sparingly and with great care.'" *Id.* (quoting *Hodges v. Att'y Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000)). For example, if the post-conviction court "discerns that a litigant is abusing the post-conviction process by filing successive petitions and seeking repeated withdrawals, or is otherwise acting in bad faith, dismissal of the action for failure to prosecute, with prejudice to the petitioner's right to refile the petition, would be proper." *Williams v. State*, 831 S.W.2d 281, 283 (Tenn. 1992); *see Cazes v. State*, 980 S.W.2d 364, 365 (Tenn. 1998) (stating that "[t]hose who abuse the [post-conviction] process cannot be heard to complain when access to the remedy is denied"). Dismissal would be improper when the record does not show that the petitioner caused the delays in the case, and the post-conviction court does not make adequate findings of fact and conclusions of law to support its decision to dismiss. *See Nance v.*

*State*, No. E2005-02265-CCA-R3-PC, 2006 WL 1575110, at *3 (Tenn. Crim. App. June 9, 2006). We review a post-conviction court's dismissal of a post-conviction petition for failure to prosecute under an abuse of discretion standard. *Caraway*, 2022 WL 1580639, at *7.

In *Jackson v. State*, No. W2019-00731-CCA-R3-PC, 2020 WL 5792961, at *1 (Tenn. Crim. App. Sept. 25, 2020), the petitioner filed his pro se petition for post-conviction relief in March 2017, and the post-conviction court appointed counsel. Despite having counsel, the petitioner proceeded to file numerous pro se amended post-conviction petitions and pro se motions seeking continuances, seeking recusal of the post-conviction court, seeking removal of appointed counsel, and seeking to represent himself. *Jackson*, 2020 WL 5792961, at *2-3. At a hearing in November 2018, the post-conviction court expressed frustration with the delays in the case and warned the petitioner that an evidentiary hearing would occur at the next scheduled hearing or would be dismissed. *Id*. at *3. At the petitioner's final hearing on March 21, 2019, the post-conviction court removed counsel from representation and allowed the petitioner to proceed pro se but again warned the petitioner that the case would be "handled" that day or dismissed. *Id*. The petitioner advised the post-conviction court that he was not prepared to proceed pro se and requested another continuance, but the post-conviction court denied the request and dismissed the petition for failure to prosecute, noting that the case already had been scheduled for an evidentiary hearing several times and concluding that the petitioner had "'persisted in interfering with the administration of justice.'" *Id*. at *4. Subsequently, the post-conviction court entered a sixteen-page "comprehensive" order in support of its dismissal. *Id*. at *4. On appeal, this court reversed the post-conviction court, concluding that the record did not demonstrate that a significant delay in the case could be attributed to the petitioner, that the petitioner's pro se filings while represented by counsel were a nullity, and that the post-conviction court's granting the petitioner's request to proceed pro se and then demanding that he immediately represent himself at the evidentiary hearing was unreasonable. *Id*. at *5.

In contrast, in *Dillard v. State*, No. W2010-00306-CCA-R3-PC, 2011 WL 744740, at *6 (Tenn. Crim. App. Mar. 1, 2011), *perm. app. denied* (Tenn. May 27, 2011), this court found "abundant evidence that the petitioner abused the post-conviction process" when the petitioner had "repeated opportunities" for an evidentiary hearing, the post-conviction court warned the petitioner that he would be required to proceed with an evidentiary hearing on a particular date, the petitioner refused to present his proof on that date, and his behavior caused delays in the case. *See id*. at *5-6.

Likewise, in *Caraway*, this court held that the post-conviction court did not abuse its discretion in dismissing the post-conviction petition for failure to prosecute when more than four years passed between the petitioner's filing his pro se petition and the dismissal.

- 6 -

2022 WL 1580639, at *2-3. During that time, the case was reset approximately twenty-six times, mostly at the petitioner's request; the first post-conviction court recused itself due to the petitioner's claim of a conflict of interest; first post-conviction counsel was allowed to withdraw due to threats by the petitioner; the State orally requested at two separate hearings that the post-conviction court dismiss the petition due to the petitioner's behavior and repeated delays; and the post-conviction court warned the petitioner that the court was going to dismiss the petition for failure to prosecute six months before the court actually did so. *Id.* After orally dismissing the petition, the post-conviction court issued a twenty-five-page written order setting out its "extensive" factual findings and conclusions of law. *Id*. at *3. This court ruled that the second post-conviction court "did not act unreasonably, arbitrarily, or unconscionably in dismissing the petition." *Id*. at *8.

Here, the technical record reflects that the Petitioner filed his pro se petition on September 21, 2020, and that the post-conviction court appointed counsel to represent him on March 24, 2021. On December 15, 2022, the post-conviction court entered an order allowing post-conviction counsel to withdraw and appointing second post-conviction counsel. The reason for first post-conviction counsel's withdrawal is not in the appellate record. The technical record shows that second post-conviction counsel filed the amended post-conviction petition six months later on June 30, 2023. The next document in the technical record is the post-conviction court's November 1, 2024 order dismissing the petition for failure to prosecute.

Although the post-conviction court stated at the September 4, 2024 hearing that the matter had been reset seventeen times, twelve for a report and five for a hearing, the court did not specify the reasons for the resets. In a written order that is barely more than one page in length, the post-conviction court stated only that the five hearings had been reset because the Petitioner was never ready to proceed. However, the Petitioner had a legitimate reason for requesting a continuance at the September 4, 2024 evidentiary hearing: Trial counsel, who had become a judge since representing the Petitioner, was presiding over a trial and was unavailable to testify. *See State v. Hopson*, 589 S.W2d 952, 954 (Tenn. Crim. App. 1979 (stating that "original counsel, when available, should always testify in a post-conviction proceeding when there is an allegation that he was ineffective"). We note that although the post-conviction court expressed frustration with the Petitioner due to trial counsel's unavailability, this court has said that *the State* "should present the attacked counsel to show what occurred." *State v. Craven*, 656 S.W.2d 872, 873 (Tenn. Crim. App. 1982).

The State did not object to the Petitioner's request for a one-week continuance or request that the post-conviction court dismiss the petition. Furthermore, nothing in the record suggests that the post-conviction court had warned the Petitioner that the petition might be dismissed at the September 4 hearing for failure to prosecute. In fact, the State

asked whether the post-conviction court had even "had a chance to review the petition and allegations that were raised."[1]  In sum, the record does not demonstrate that the Petitioner was abusing the post-conviction process, was using the resets to gain a tactical advantage, or was acting in bad faith.  Accordingly, we conclude that the post-conviction court erred by dismissing the petition for failure to prosecute.

## CONCLUSION

Upon our review, the post-conviction court's order dismissing the post-conviction petition for failure to prosecute is reversed, and the case is remanded to the post-conviction court for an evidentiary hearing.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE

---

[1] We note that the original post-conviction judge retired in 2022.